IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TRISHA LYNN ULIBARRI,
Plaintiff,
vs.
SHOSHONE COUNTY, et al,
Defendants.

Case No. CV09-110-N-EJL

MEMORANDUM ORDER

Pending before this Court in the above titled matter is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion shall be decided on the record before this Court without oral argument.

## BACKGROUND

On November 21, 2008 at approximately 11:30 p.m. Corporal Darius Dustin ("Dustin") and Deputy Mike Groves ("Groves") were dispatched to 612 C Street Pinehurst, Idaho in Shoshone County on a report of neighborhood disturbance. Dustin and Groves arrived at the address together and spoke with resident Tina Fugate, who informed the officers that she and her neighbor, Trisha Ulibarri, were involved in a verbal altercation. The officers then went to the Ulibarri residence located at 208 Maple Street, where they contacted Randi Ulibarri, Trisha's husband, and asked to speak with Trisha. Randi informed the officers that Trisha took off in her mother's car and that Trisha was intoxicated. The officers asked Randi if he knew where Trisha might have gone and Randi responded that he did not know. The officers then left the Ulibarri residence in search of Trisha.

Shortly thereafter, Dustin located a grey Dodge Stratus matching the description Randi had given of the mother's vehicle traveling east onto Maple Street. According to Dustin, the vehicle was traveling in the middle lane, then moved into the westbound lane of traffic (the oncoming traffic lane). Given the information received from the husband and the erratic pattern of driving, Dustin suspected that the driver was under the influence of alcohol. Dustin then switched on his emergency lights to stop the vehicle. The grey Dodge car pulled into the driveway of 208 Maple Street, the Ulibarri Residence. Dustin is familiar with and knows Trisha Ulibarri, acknowledging that the Sheriff's Department have frequently been dispatched to the Ulibarri residence and that Dustin has been in contact with the Ulibarris on numerous occasions. He saw that Trisha was in the driver's seat. According to Dustin, when Trisha exited the vehicle, he could immediately smell the strong odor of alcohol coming from her. Deputy Groves also reported that Trisha was unsteady on her feet and also smelled the odor of alcohol coming from Trisha. Dustin asked Trisha how many alcoholic beverages she had consumed that night and Trisha falsely stated that she had not consumed any alcohol that evening.

Dustin then informed Trisha that he would like her to perform several field sobriety tests. Dustin first performed the gaze nystagmus test, asking Trisha to follow his pen with her eyes only and not to move her head. According to Dustin, Trisha was not able to hold her head still and failed this test on six points. Next, Dustin asked Trisha to walk in a straight line, touching heel to toe. Dustin repeated his instructions several times to Trisha, informing her not to start the evaluation until she was told to do so. Trisha apparently failed this test on seven points, missing heel to toe and stepping off line. For the final test, Dustin instructed Trisha to stand on one leg, but again not to begin the test until instructed to do so. According to Dustin, he had to repeatedly instruct Trisha on the proper way to perform the test. He also asserts that Trisha became belligerent and argumentative and told Dustin she would not perform the test. Dustin then placed Trisha under arrest for driving under the influence ("DUI"). Deputy Groves handcuffed Trisha with her hands behind her back. Dustin instructed Trisha to stand facing the patrol car to perform a pat down search. Trisha allegedly was standing offset at which point Dustin instructed Trisha again to stand facing the vehicle. Dustin alleges that Trisha quickly turned right, towards Dustin in an aggressive manner and

while trying to pull away. Dustin states he was unsure as to whether Trisha would attempt to flee or turn around and kick him and therefore took Trisha to the ground.

In the process of taking Trisha to the ground, Dustin alleges that Trisha continued to struggle and pull away from Dustin which caused his hand to slip from her upper arm. Dustin further alleges that because of this resistance, he was unable to support Trisha as she went to the ground, causing loss of balance and resulting in Trisha falling face first onto the pavement.

Dustin held Trisha on the ground until she calmed down and agreed to cooperate. Once cooperative, the officers assisted Trisha to her feet and began to treat her injuries. Medical personnel were dispatched to the scene to treat Trisha's injuries, which included broken teeth and facial lacerations. She was subsequently transported to the hospital by ambulance accompanied by Deputy Groves.

Trisha was arrested and cited for driving under the influence and resisting arrest. Charges were dropped on the resisting arrest and Trisha pled guilty to her DUI offense. Trisha now sues the County, the Sheriff's Department, the Sheriff, and the arresting officers Cpl. Dustin and Deputy Groves claiming she was subjected to excessive force in violation of her Fourth and Fourteenth Amendment rights.

Defendants move for summary judgment on all claims on the basis that the use of force was not excessive or unreasonable based on the circumstances presented, was not in violation of the Fourth Amendment, and should be granted on qualified immunity grounds. Defendants also claim Ulibarri has not shown acts or omissions on the part of the County to create liability.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). This burden may be met by showing or pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

Once the moving party has met its initial burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. See Id. at 323-324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only genuine disputes over facts that might affect the outcome of the case will preclude the entry of a summary judgment. Anderson, 477 U.S. at 248 (factual disputes whose resolution would not affect the outcome of the case are irrelevant to the consideration of summary judgment).

A genuine dispute is one where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.; Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties [however] will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only facts which are material—those that may affect the outcome of the case—are relevant. Id. at 248. Thus, this Court must determine whether Ulibarri has, "by affidavits or otherwise" as provided in Rule 56, "set forth specific facts showing . . . a genuine issue for trial." Rule 56(e).

The evidence must be viewed in the light most favorable to Ulibarri, and the Court must not make credibility findings. Id. at 255. Moreover, direct testimony of Ulibarri must be believed, however implausible. Leslie v. Grupo ICA, 198 F.3d 1152, 1159 (9th Cir. 1999); see also Adickes v. SH Kress & Co., 398 U.S. 144, 148-49 (1970) (holding that courts should view the evidence and any inferences that may be drawn from in the light most favorable to the non-moving party). The Court must also be "guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255. However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. McLaughlin v. Liu, 849 F.2d 1205, 1208 (9th Cir. 1988).

**DISCUSSION**

Ulibarri filed a four count complaint alleging deprivation of civil rights by use of excessive force, conspiracy to interfere with civil rights, failure to adequately train and supervise police officers, and for negligent hiring, retention and failure to discipline or take necessary corrective actions under 42 U.S.C. §§ 1983, 1985. The alleged violations arise from Ulibarri's arrest for driving under the influence of alcohol on November 21, 2008.

**1. 1983: Civil Rights Violation Claim in General**

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that the individual officers Dustin and Groves were acting under color of state law. Therefore, the question becomes whether the Defendants' actions deprived Ulibarri of a right, privilege or immunity secured by the Constitution or federal law.

a. **Liability of Officers in Official Capacity**

"Section 1983 claims against government officials in their official capacities are really suits against the government employer because the employer must pay any damages awarded." Butler v. Elle, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002). In such suits, the real party in interest is the entity for which the official works. Hafer v. Melo, 502 U.S. 21, 25 (1991). In this case, the real party in interest is the officials' employer, Shoshone County. Put another way, a suit against Defendants Dustin, Groves, Reynolds, Richter, and Plank in their official capacities is the same as a suit against Shoshone County—the payor of any damages that may be awarded. Because the proper defendant is Shoshone County, Ulibarri's § 1983 claims against Defendants Dustin, Groves, Reynolds, Richter, and Plank in their official capacities are dismissed.

i. **Ulibarri's Claim of Excessive Force by Dustin**

Ulibarri brings excessive force claims under both the Fourth and Fourteenth Amendments. However, Ulibarri's § 1983 claim under the Fourteenth Amendment is not applicable in the case at bar. The Fourteenth Amendment is a source of protection from excessive force when one is a pretrial detainee. See Bell v. Wolfish, 441 U.S. 520, 535-39 (1979) (holding that the Due Process Clause protects a pretrial detainee from the use of excessive force); see also Graham, 490 U.S. at 394-96 (holding that the primary source of excessive force claim is Fourth Amendment rather than Fourteenth or Eighth Amendment). On the other hand, a § 1983 claim based on the Fourth

Amendment relates to the use of excessive force by police during arrest procedures, as alleged in the present case. Robins v. Harum, 773 F.2d 1004, 1008 (9th Cir. 1985). Thus, only Ulibarri's § 1983 claim under the Fourth Amendment will be discussed.

**a. Was there a constitutional violation?**

Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 397 (1989). The Fourth Amendment "has long recognized that the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat to effect it." Graham, 490 U.S. at 396. Although it is not required that police officers use the "least intrusive degree of force possible…" Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994), the "force which [i]s applied must be balanced against the need for that force." Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001) (quoting Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997)). However, because excessive force cases usually turn on a jury's credibility of determinations, summary judgment should be granted sparingly. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).

Excessive force cases are decided on a case-by-case basis to determine whether the totality of the circumstances justified the force used as judged from the perspective of a reasonable officer at the scene. Id. at 396 (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." Id. at 396-97. Thus, such "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 397.

Determining whether the force used to effect an arrest was reasonable under the Fourth Amendment, however, requires a balancing of the nature and quality of intrusion on the individual's interests against the governmental interests at stake. Graham, 490 U.S. at 396. The following factors must be considered in this analysis: (1) the severity of the crime at issue; (2) whether Ulibarri posed an immediate threat to the safety of the officers or others; and (3) whether Ulibarri actively resisted

arrest. Ramirez v. City of Ponderay, 2008 WL 2445483, at *7 (D. Idaho June 16, 2008) (citing Arpin, 261 F.3d at 921).

The question for this Court is whether genuine issues of material fact exist in determining whether Dustin used excessive and unreasonable force while arresting Ulibarri for DUI. Defendants contend that the facts of the case do not rise to the level of a constitutional violation given the totality of the circumstances. Specifically, Defendants argue that Ulibarri cannot show that Dustin and/or Groves were objectively unreasonable in employing the degree of force used to take Ulibarri into custody based on the Graham factors.

The first factor this Court must consider is the severity of the crime at issue. The officers were dispatched on a report to a neighborhood disturbance. Only afterwards did they learn that Ulibarri was allegedly driving under the influence. Although the act which prompted the officers' investigation was minor—a report of a neighborhood disturbance—driving under the influence of alcohol is not a trivial crime. The charged offense was a misdemeanor as opposed to a felony; however, the Court agrees with Defendants that driving under the influence of alcohol poses not only the threat of injury and death to Ulibarri herself, but also to others. This is especially true as Ulibarri had a 0.29 blood alcohol level and was reportedly driving in the wrong lane. See e.g. Ramirez, 2008 WL 2445483, at *8 (crime was fairly severe because plaintiff was driving while intoxicated and nearly hit a pedestrian).

The second factor considers whether Ulibarri posed an immediate threat to the safety of the officers or others. The threat posed is the most significant Graham factor. Brooks v. City of Seattle, __ F.3d.__, 2010 WL 1135776, at *8 (9th Cir. 2010) (citing Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994)). Under this factor, Defendants argue that Ulibarri was too intoxicated to listen to Dustin's instructions and repeatedly failed the field sobriety tests and that he could not reasonably let his guard down. Defendants concede, however, that Ulibarri had not been resistant until she allegedly stood offset and turned toward Dustin in an aggressive manner after being placed in handcuffs.

It would be incorrect to state that Ulibarri posed no threat to officers as "a suspect who repeatedly refuses to comply with instructions or leave her car escalates the risk involved for officers

unable to predict what type of noncompliance might come next." Id. at *8. Yet it has also been clearly recognized that "[t]he problems posed by, and thus the tactics to be employed against an unarmed . . . individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in . . . efforts to subdue an armed and dangerous criminal who has recently committed a serious offense." Deorle, 272 F.3d at 1282-83.

The Court "recognize[s] that police officers' decisions about the appropriate amount of force to use in a given circumstances 'are often…split-second judgments" made in tense, uncertain and rapidly evolving circumstances. Id. at 1283 (quoting Graham, 490 U.S. 396-97)). However, in watching the on-board video the Court finds that a situation such as this was not present in the case at bar.

In this case, the two officers Cpl. Dustin and Deputy Groves were not suddenly confronted by a dangerous and armed felon threatening immediate violence. There is no indication in the record that Ulibarri posed a threat of death or serious bodily harm to others once she was handcuffed. Defendants admit Ulibarri had not been resistant up to that point, but also acknowledge she was severely intoxicated and was noncompliant while being tested so that Dustin could not let his guard down. Defendants also acknowledge that prior to Ulibarri being handcuffed, she showed no signs of aggression or that she was trying to flee from the officers.

According to Dustin, he was unsure if Ulibarri would try to flee and/or kick him, so he forced her to the ground. At the time of the incident, Ulibarri was not only handcuffed behind her back, but was also barefoot and coatless on a cold November night. These facts coupled with the physical size and strength of Ulibarri in comparison to the two officers, greatly minimizes any threat posed to the officers and weighs in favor of Ulibarri. In addition, the facts are controverted as to whether Ulibarri was in fact refusing to comply with the officers because there is no audio on the on-board video. Viewing the facts in a light most favorable to Ulibarri, a reasonable jury could find objectively that Ulibarri was not a serious threat to the officers or others.

The last factor to consider is whether Ulibarri actively resisted arrest. Defendants contend that Ulibarri was noncompliant with Dustin's orders after she had been placed in handcuffs. According to Dustin, he ordered Ulibarri to stand facing the patrol vehicle, which she failed to do, and then

took an aggressive stance toward Dustin. It was at that moment that Dustin took Ulibarri to the ground. Dustin states that it was Ulibarri's continued resistance to him that caused him to lose his grip on her, resulting in her falling face first to the ground. The fall caused Ulibarri's tooth to be knocked out by the root, chipped a neighboring tooth, and caused "severe facial lacerations." (Pl's Brief in Opp. 6).

Plaintiff on the other hand asserts that she was fully compliant and nonresistant to the officers. She states that she did her best to comply with Dustin's orders during the field sobriety tests by following his instructions on where to stand, how to stand, and where to move. (Ulibarri Aff. ¶ 6). Ulibarri acknowledges that she repeatedly asked Dustin to allow her to get her own shoes and a coat jacket to complete the field sobriety tests, but was refused. She also acknowledges that Dustin took out his Tazer gun and threatened her with it, but contends that she was not trying to run or pull away from Dustin; rather, she was standing motionless and obeying his orders. (Ulibarri Aff. ¶ 5).

In her statement of facts, Ulibarri alleges that the on-board video shows that she was standing motionless next to the police car and the two armed officers and that she was not only secured in handcuffs but also non-resistant before she was suddenly thrown to the ground. She also contends that the on-board video demonstrates that Dustin was not looking in Ulibarri's direction but instead was "calmly chatting to Officer Groves and looking away from Ulibarri just before [the] incredibly violent maneuver took place." (Pl.'s Statement Material Facts 2-3). Plaintiff alleges that after she was thrown to the ground by Dustin, he placed his hand on the back of her head and ground her face into the pavement which caused deep and painful scrapes on her face. (Ulibarri Aff. ¶ 7). It is Plaintiff's belief that she was thrown to the ground and her head "slammed" into the pavement by Dustin because she was being "mouthy," but that her reasons for being so were because she was "literally freezing" and her "feet were very painful" after doing the field sobriety tests. (Complaint ¶ 28, Ulibarri Aff. ¶ 6).

Dustin contends that the on-board video from his police vehicle shows the degree of force he used was not excessive, and that his judgment to use such force was reasonably exercised. The Court respectfully disagrees the video establishes these facts. The on-board videotape provided to the Court by the parties does not have audio. Moreover, given the darkness of the video and its

limited range of views, the Court is unable to determine whether Ulibarri was in fact resisting arrest or being uncooperative. Without the aid of audio, it is difficult to discern wither Ulibarri was actually standing offset and resisting arrest and whether she was being noncompliant to the officers' instructions. Having reviewed the videotape numerous times, the Court finds that a reasonable jury could conclude that lesser force should have been used given the size of Dustin in comparison to Ulibarri, the presence of another officer in close proximity, and the minimal risk of flight posed given that she was barefoot, coatless and handcuffed. Thus, on the disputed facts presented, summary judgment as a matter of law is inappropriate.

**b. Is Dustin Entitled to Qualified Immunity Defense?**

Public officials such as police officers sued in their personal capacity may assert personal liability defenses such as qualified immunity. Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999). Police officers are entitled to qualified immunity for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 129 S.Ct. at 815.

A court must apply a two-step analysis to determine whether qualified immunity applies to an excessive force claim arising in the context of an arrest. Saucier, 533 U.S. 194, 201 (2001). First, the court should determine whether, "taken in the light most favorable to the party asserting the injury, [whether] the facts alleged show the officer's conduct violated a constitutional right." Saucier at 201. If a violation can be made out from the submissions of the party, then the court must determine whether the breached constitutional right was clearly established. Id. The "clearly established" inquiry must be viewed in the light of the specific context of each case rather than as a broad general proposition. Id. If the right was not clearly established, however, then qualified immunity applies. Id.

This inquiry is primarily a legal one. However, where the reasonableness of the officer's belief that his conduct was lawful "depends on the resolution of disputed issues of fact . . . summary judgment is not appropriate." Wilkins v. City of Oakland, 350 F.3d 949 (9th Cir. 2003). Here, the Court must consider whether Ulibarri's rights were violated on the basis of the evidence presented, viewed in a light most favorable to her. As this Court has already stated, whether a particular use of force is reasonable is determined under the objective reasonableness standard. Graham, 490 U.S. at 396.

Having already determined that there are disputed issues of material facts on whether excessive force was used, the Court begins its qualified immunity analysis with whether the law is "clearly established" such that a reasonable officer could believe his actions were lawful. Saucier, 533 U.S. at 194-195. At the time of the alleged incident in this case it is undisputed that it was clearly established law that the use of excessive force is a violation of the Fourth Amendment. Id. at 202. The Court however refrains from deciding the issue of qualified immunity because although the Court finds that the rights are "clearly established," the issue of whether there was a constitutional violation remains a question for the jury. Thus, Defendants' motion for summary judgment on this defense is denied.

ii. **Groves' Failure to Intervene**

Although Ulibarri does not directly allege a cause of action for "failure to intervene" to prevent excessive force in her complaint, it is the only plausible cause of action to be asserted against Defendant Deputy Groves because Groves was not physically involved in taking Plaintiff to the ground. It is true that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or another citizen." United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996). However, assuming a failure to intervene claim is alleged, such claims have limitations. An officer may be held liable for failure to intercede "only if they had an opportunity to intercede." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

In this case, there was no such opportunity. It is clear from the videotape that the incident of taking Ulibarri to the ground occurred in a split second. Moreover, the alleged constitutional

violation was limited to a single take-down. Given the circumstances surrounding the alleged violation, there was no opportunity for Groves to intervene or intercede the alleged unconstitutional conduct of Dustin. Thus, in applying the summary judgment standard, the evidence presented by Ulibarri does not support a failure to intervene claim that Groves should have, or could have, prevented Dustin from putting her to the ground. Accordingly, summary judgment for any cause of action regarding Defendant Deputy Groves for failure to intervene to prevent the use of excessive force is granted, and all actions against Groves are dismissed.

2. **1983 Claims: Failure to Adequately Train and Supervise Officers & Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action**

a. **Liability of the Sheriff's Department**

Ulibarri brings suit not only against Shoshone County but also against the Shoshone County Sheriff's Department. "Shoshone County Sheriff's Department" however is not a legal entity, Maxwell v. Henry, 815 F. Supp. 213, 215 (S.D. Tex. 1993), nor is it a "person" for purposes of § 1983 litigation. Vance v. County of Santa Clara, 928 F. Supp. 993 (N.D. Cal. 1996). Shoshone County by itself, exclusive of the Sheriff's Department, is the proper legal entity to be sued in this type of case. Therefore, as a matter of law, the claims against Defendant Shoshone County Sheriff's Department must be dismissed.

b. **Liability of Shoshone County**

As to the county, a municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Municipalities can only be held liable "if either a policy or custom leads to the violation of the constitutional right." Mason v. City of Camas, 2006 WL 2871832 (W.D. Wash. Oct. 6, 2006) (citing Monell, 436 U.S. at 690-91). To establish liability, a plaintiff must "allege that the action inflicting injury flowed from either an explicitly adopted or tacitly authorized city policy." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986). This requires the plaintiff establish evidence of a "formal policy" or "widespread practice" by the county. Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001).

A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillete v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellsenburg, 869 F.2d 1230, 1233 (9th Cir. 1989). Additionally, it must be shown that it was the municipality's *deliberate* conduct that was the moving force behind the injury alleged. Bd. of the County Comm'rs of Bryan County, Okla. vs. Brown, 520 U.S. 397, 397 (1997) (emphasis in original).

Ulibarri advances two theories of municipal liability: (1) failure to train and supervise and (2) negligent hiring, retention and failure to discipline or take corrective actions. "A municipality's failure to train an employee who has caused a constitutional violation can be the basis of a § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006). Here, Ulibarri alleges in her Complaint that the Sheriff's Department failed to train or supervise its officers but has failed to produce any specific evidence of a training or supervision policy that led to a constitutional violation in this case. In fact, there is no evidence which shows that the officers were not reasonably and properly instructed on how to deal with resisting suspects. Nor has Ulibarri provided evidence that the actual training received created a widespread practice or repeated constitutional violations that errant officers were not disciplined for. To the contrary, Defendants have provided evidence that their actions were consistent with department policy and procedures.

Ulibarri also fails to provide any explanation as to how the Sheriff's Department's policies caused her alleged constitutional violations, and offers no evidence of a custom of past incidents of the County allowing its Sheriff's Deputies to use excessive force and regularly put females in handcuffs to the ground. The mere fact that force is authorized by the policies does not equate to a showing that the policies caused the alleged unconstitutional deprivation.

The Court finds that Ulibarri has failed to carry her burden to establish via evidence that the municipality had a policy or custom that was the moving force behind the alleged constitutional

violations. On the facts presented, the Court finds there is no genuine issue of material fact with respect to the failure to train, supervise, discipline or negligent hiring and retention, and grants summary judgment on these counts.

c. **Liability of Reynolds, Richter, Plank in Official Capacity**

Defendants Chuck Reynolds, John Richter, and Rod Plank were sued in both their official capacities as Sheriff, Sergeant, and Lieutenant of the Shoshone County Sheriff's Department, respectively, and in their individual capacities. Ulibarri claims it was these individuals who had the responsibility and authority to hire, train, supervise officers, and who set and enforce the Sheriff Department's policies and procedures. As discussed above, Ulibarri's claims against Reynolds, Richter, and Plank in their official capacities are dismissed because the proper defendant is Shoshone County—the responsible party for any damages awarded. The Court finds Ulibarri has failed to set forth any evidence that Dustin and Groves were not properly trained or supervised, so this claim must be dismissed as to the County.

d. **Liability of Reynolds, Richter, Plank in Individual Capacity**

The Court will now analyze whether these defendants may be held personally liable. "A supervisor can be held liable for excessive force under the Fourth Amendment if he or she was personally involved in depriving a plaintiff of constitutional rights, or if there is sufficient causal connection between the wrongful conduct of the supervisor and the violation of the constitutional right." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Personal liability of Defendants Reynolds, Richter and Plank in their individual capacities may arise only when (1) it is their own "culpable action or inaction in the training, supervision or control of subordinates" that caused the constitutional injury "for which they "acquiesce[d] in the constitutional deprivations of which [the] complaint is made;" or that (2) their conduct showed a "reckless or callous indifference to the rights of others." Phillips v. City of Fairfiled, 406 F. Supp. 2d. 1101, 1116 (E.D. Cal. 2005) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

To establish a causal connection between these Defendants' actions and the alleged constitutional violation, Ulibarri must provide evidence that the Reynolds, Richter, and/or Plank "set

in motion a series of acts by others, knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict the constitutional injury." Larez, 946 F.2d at 646. Here, Ulibarri does not allege that any of these Defendants were personally involved in the alleged application of excessive force. Moreover, there is no evidence that establishes the requisite causal connection showing a moving force, or that the supervisory officials implemented any policy so deficient that the policies themselves are unconstitutional; thus, summary judgment as to Defendants Reynolds, Richter, and Plank is granted.

3. **Ulibarri's Conspiracy Claim under § 1985**

In her complaint, Ulibarri also brings a claim for conspiracy to interfere with her civil rights under 42 U.S. § 1985. Specifically, Ulibarri alleges that the Defendants conspired to harm her by teaching her a lesson and causing her pain through the use of excessive force. She alleges that it was the practice and policy of the Sheriff's Department and officers to abuse "helpless and handcuffed female citizens," and that the conspiracy to do so manifested itself in the preparation of an allegedly false police report written by Dustin which alleged the false charge of "Delay and Obstruct a Police Officer." (Complaint ¶ 31-32).

Section 1985 authorizes private actions against conspiracies to deprive any person of the equal protection of the laws. To successfully bring a cause under § 1985, a plaintiff must prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or any privilege of a Citizen of the United States. LeBlanc v. City of Los Angeles, 2006 WL 4752614, at 19-20 (C.D. Cal. Aug. 16, 2006) (citing Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). The second element requires that the plaintiff demonstrate a deprivation of a right motivated by "some racial, or. . . otherwise class-based invidiously discriminatory animus behind the conspirators' action" LeBlanc, at *20 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

There is no evidence in the record to suggest that there is any racial or class-based animus, or any policy based on such an animus. Nothing in the record suggests Defendants had a policy to

treat women harshly when being arrested or that there were reported incidents of such treatment by other officers. The only evidence of conspiracy that Ulibarri points to is an alleged false police report by Dustin charging Ulibarri with the offense of delaying and obstructing a police officer. Ulibarri contends that this charge was part of a conspiracy and that it was part of the Sheriff Department's malicious prosecution scheme because the charge was ultimately dropped. The Court finds this argument unpersuasive and unsupported. While the charges were dismissed, there is no evidence to the contrary that it was not dismissed in return for Ulibarri's plea to the DUI charge. Further, the Court finds Plaintiff has failed to establish that the alleged wrongful take-down by Dustin was for the purpose of depriving a female arrestee of equal protection of the laws. As such, the Court finds that Ulibarri has failed to satisfy her burden and the Court grants summary judgment in favor of Defendants on the conspiracy claim.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' Motion of Summary Judgment (Docket No. 18) is DENIED in part and GRANTED in part. It is DENIED as to liability of Defendant Shoshone County on the issue of excessive force by Cpl. Dustin, and further denied as to the defense of qualified immunity asserted by Defendant Dustin. It is GRANTED as to the counts alleging conspiracy, failure to adequately train and supervise police officers, and negligent hiring, retention and failure to discipline or take necessary corrective action.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: **May 3, 2010**

Honorable Edward J. Lodge
U. S. District Judge